Thomas H. Allen, State Bar #11160
Katherine Anderson Sanchez, State Bar #30051
**ALLEN MAGUIRE & BARNES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: tallen@ambazlaw.com
        ksanchez@ambazlaw.com

Attorneys for Debtor

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | CHAPTER 11 |
| DIAMOND R LLC, | Case No. 3:14-bk-14118-EPB |
| Debtor. | **DEBTOR'S DISCLOSURE STATEMENT DATED APRIL 20, 2015** |

Diamond R, LLC, the Debtor and Debtor-in-possession in the above-captioned Chapter 11 case ("Debtor"), through undersigned counsel, hereby submits this *Disclosure Statement Dated April 20, 2015* ("Disclosure Statement") to assist its creditors in making an informed decision in voting on the *Debtor's Plan of Reorganization Dated April 20, 2015* (the "Plan") proposed pursuant to 11 U.S.C. § 1121. A copy of the Plan is attached hereto as **Exhibit A.**

## ARTICLE 1

## INTRODUCTION TO THE DISCLOSURE STATEMENT AND VOTING

### 1.1    Purpose of the Disclosure Statement.

This Disclosure Statement sets forth certain information regarding the Debtor's pre-petition history, its assets, significant events that have occurred during this Chapter 11 case, a summary of the Plan, including when and how creditors will be paid, and a brief discussion of the confirmation process and the voting procedures that holders of claims in Impaired Classes must follow for their votes to be counted.

The primary purpose of this Disclosure Statement is to provide adequate information to those creditors voting on the Plan so that they may make a reasonably informed decision with respect to exercising their right to accept or reject the Plan. This Disclosure Statement is intended

for the sole use of creditors and other parties in interest.  This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan and nothing contained herein shall constitute an admission of any fact or liability by any party or be admissible in any proceedings involving the Debtor or any other party or be deemed conclusive advice on the tax or other legal effects of the reorganization on holders of claims or interests.

**You should consult your personal counsel or tax advisor on any questions or concerns with respect to tax, securities, or other legal consequences of the Plan.**

### 1.2    Definitions.

Unless otherwise defined herein, terms defined in the Plan shall have the same meaning when used in this Disclosure Statement.  In addition, unless otherwise defined herein or in the Plan, terms used in this Disclosure Statement shall have the same meaning as in the Bankruptcy Code (the "Code") or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") or, if not defined therein, their ordinary meaning.

### 1.3    Authorized Representations.

This Disclosure Statement is the only document authorized by the Bankruptcy Court to be used in connection with the solicitation of votes on the Plan.  You should not rely upon any representations or inducements made to secure your acceptance of the Plan other than those set forth herein or in the Plan.  **The Bankruptcy Court's approval of this Disclosure Statement does not constitute a certification or ruling by the Court regarding the completeness or accuracy of any statements contained herein.  The information contained in this Disclosure Statement came from the Debtor and the Debtor's records.**

This Disclosure Statement is not the Plan.  This Disclosure Statement, together with the Plan (Exhibit A), should be read in their entirety before you vote on the Plan.  For the convenience of the creditors and holders of interests, the Plan is summarized in this Disclosure Statement, but all summaries are qualified in their entirety by the Plan itself, which is controlling in the event of any inconsistency.  The financial information contained herein has been provided by the Debtor in good faith, but has not been audited by a certified public accountant and has not necessarily been prepared in accordance with generally accepted accounting principles.

1      **1.4**     <u>**Voting Procedures.**</u>

2      To be entitled to vote, a creditor must have an Allowed Claim that is impaired under the

3 Plan. The Bankruptcy Code defines whether a claim is impaired under 11 U.S.C. § 1124.

4 Summarily, a claim is impaired if the plan modifies the legal or contractual rights of the claimant,

5 or if the plan does not cure and reinstate the legal rights of the claimant. A creditor in a class that

6 will not, under any circumstances, receive any distributions under the Plan, is not entitled to vote as

7 the class of which it is a member is deemed to have rejected the Plan. If a creditor holds more than

8 one claim in one class, all of the claims in such class will be aggregated and the creditor will be

9 entitled to one vote in the amount of all aggregated claims.

10      **All creditors or parties in interest entitled to vote on the Plan may cast their votes for**

11 **or against the Plan by completing, dating and signing the Ballot which accompanies this**

12 **Disclosure Statement.**

13      In order for the Ballot to be considered, the original Ballot must be sent to the attorneys for

14 the Debtor. **The Court has issued an order requiring that all votes for the acceptance or**

15 **rejection of the Plan be <u>*received*</u> by the attorneys for the Debtor at or before 5:00 p.m.,**

16 **Mountain Standard Time, on _____.** The Ballots should be sent to the following:

17
                 Thomas H. Allen
                 Katherine Anderson Sanchez

18                  ALLEN MAGUIRE & BARNES, PLC
                 1850 N. Central, Suite 1150

19                  Phoenix, Arizona 85004
                 Fax: 602-252-4712

20

21      **Your ballot will not be counted if the attorney for the Debtor receives it after such**

22 **deadline.** You may not change your vote after it is cast, unless the Bankruptcy Court permits you

23 to do so after notice and a hearing to determine whether sufficient cause exists to permit the

24 change.

25      **1.5**     <u>**Confirmation of the Plan.**</u>

26      In order for the Plan to be effective, it has to be confirmed. Confirmation of the Plan

27 means that the Court has approved the Plan. For the Plan to be confirmed, votes by each Impaired

28 Class representing at least two-thirds (2/3) in amount of the Allowed Claims voting in each class

and greater than one-half (1/2) in number of individual creditors for such class (of those casting votes) must be submitted in favor of acceptance of the Debtor's Plan. <u>If the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Debtor's Plan pursuant to 11 U.S.C. § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Debtor's Plan provides, among other things, fair and equitable treatment of the classes rejecting the Plan and that creditors receive as much or more under the Plan than they would receive in a Chapter 7 liquidation (discussed more fully below).</u>

When confirmed by the Bankruptcy Court, this Plan will bind all holders of claims or equity interests in the Debtor, whether or not they are entitled to vote, or did vote on the Plan and whether or not they received or retained any distributions or property under the Plan.

**1.6** **Debtor's Recommendations and Position.**

The Debtor strongly urges each creditor to vote to accept the Plan. The Debtor believes that each person or entity entitled to vote will conclude that the Plan is fair, reasonable and provides the greatest return to the greatest number of creditors.

**ARTICLE 2**

**2.1** **History of the Debtor and Incidents Leading to Chapter 11 Filing.**

The Debtor is a Nevada Limited Liability Company formed in 1996 with its principal place of business in Skull Valley, Arizona. The Debtor owns three large pieces of real property: 113 acres of vacant land comprised of three parcels in Needles, California, (the "Rio Vistancia Property"); a single family home located at 1184 Beach Drive, Needles, California ("Beach Drive Property"); and 674 acres of vacant land comprised of two parcels located in Nogales, Arizona ("Nogales Property"). Debtor acquired the Rio Vistancia Property in 2006 for approximately $4,000,000.00 and planned to develop the property for residential or commercial use. Shortly after acquisition of the Rio Vistancia Property the market declined and Debtor was unable to develop the property as originally planned.

J. Scott Miller ("Miller") holds the first position lien on the Rio Vistancia Property and the Nogales Property. Miller was the Debtor's former business partner, however in December 2009, Mr. Miller purchased the original debt on the Rio Vistancia Property from National Bank

of Arizona. When Debtor was unable to repay the note to Miller on the Rio Vistancia Property, Miller and Debtor negotiated a loan modification which gave Miller, among other things, a first position deed of trust on the Rio Vistancia Property and the Nogales Property. Subsequently, Debtor was sued on unsecured debts to California Business Bank and Cessna Finance. California Business Bank holds a second position deed of trust on the Rio Vistancia Property. Cessna Finance may have recorded a judgment lien within the preference period, if so; Debtor will seek to avoid the lien.

Shortly before the Petition Date, Miller noticed a trustee's sale of the Rio Vistancia Property and Cessna Finance domesticated its judgment against Debtor and garnished the Debtor's bank account. Debtor filed for Chapter 11 relief to allow it to propose a Plan that will pay priority and secured creditors and make a meaningful distribution to unsecured creditors.

### 2.2 Debtor's Future.

Recently property values in the area have increased and lots north of the Rio Vistancia Property are selling for as much as $550,000.00. As a result of this increase, Debtor estimates the value of the Rio Vistancia Property at $6,000,000.00. As the economy recovers and property values begin to increase, the Debtor believes it will be able to successfully reorganize. Debtor has employed a real estate agent to market lots in the Rio Vistancia Property. Debtor's Plan proposes to subdivide the Rio Vistancia Property and sell the property in smaller lots. The Plan provides for a release price to be paid to the secured creditor upon the sale of the lot. Debtor believes its Plan will maximize the value of the properties and allow for the most distribution to creditors.

### 2.3 Management of the Debtor

The Debtor is a manager managed LLC and is managed by its members, Ron and Cristy Varela. Jason Varela, Ron and Cristy's son, is responsible for the day to day management of the Debtor. The Varela family has been in the field of property development for over 25 years and owns other development and construction companies. The Varelas will continue to manage the Debtor throughout the reorganization. The Varelas are not compensated by the Debtor for their services.

**ARTICLE 3**

**DEVELOPMENTS DURING THE BANKRUPTCY CASE**

On September 15, 2014, the Debtor filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 – 1532). On October 11, 2014, the Court entered an Order approving the Debtor's application to employ Allen Maguire & Barnes, PLC as Debtor's counsel. On the Petition Date the Debtor's believed no creditor had an interest in the Debtor's cash collateral and there were no other issues necessitating the filing of any first day motions. Debtor sought to employ Calene Williams of CJ Williams ("Williams") and Vince Reynolds of CBRE Capital Markets, San Diego, California ("Reynolds") to market the Rio Vistancia Property. On October 12, 2014, the Court approved Reynolds' employment and on February 14, 2015 the Court approved Williams' employment. Debtor has also employed Nanci Pottinger-Crowder of Noginan Real Estate to market the Nogales Property, her employment was approved by the Court on October 12, 2014.

Cessna Finance Corporation ("Cessna") holds a judgment lien against the Debtor. On February 10, 2015, the Court entered an Order granting Cessna's request for a 2004 examination of the Debtor. Debtor has provided documents to Cessna pursuant to the request and Cessna has deposed Jason Varela, the individual with the most knowledge regarding the Debtor's business. Debtor's largest secured debt is a first position lien on the Rio Vistancia Property and the Nogales Property. Creditors J. Scott Miller, Hans R. Graf and Dan Bailey ("Miller") hold the Note secured by this lien. Since shortly after the Petition Date, Debtor has been involved in ongoing negotiations with Miller with respect to the treatment of Miller's secured claim.

**ARTICLE 4**

**SUMMARY OF THE DEBTOR'S CURRENT FINANCIAL CONDITION**

Debtor's regular monthly income is derived from rental income received from the Beach Drive Property and the management of a neighboring property located at 1160 Beach Drive, Needles, California and owned by J. Scott Miller. The monthly income received from these properties is sufficient to cover the Debtor's expenses. Debtor will fund the Plan through the subdivision and sale of the Rio Vistancia Property and a sale of the Nogales Property. Debtor

anticipates that during the first year of the Plan, lots in the Rio Vistancia Property will be sold in the range of $335,000.00 to $380,000.00 with the sales price increasing each year thereafter.

The Debtor's current financial condition is further detailed in the Schedules and Statements of Financial Affairs and the Monthly Operating Reports that have been and will continue to be filed with the Bankruptcy Court. Creditors are encouraged to review the Schedules, Statements of Financial Affairs and Monthly Operating Reports. Specific details concerning the Debtor's prospective finances are provided in Article 8 below, and in the Projections attached as **Exhibit B.**

**ARTICLE 5**

**DESCRIPTION OF ASSETS**

The major assets of the Debtor include the Rio Vistancia Property, the Nogales Property and the Beach Drive Property. Debtor estimates the value of the Rio Vistancia Property at $6,000,000.00, the Nogales Property at $1,200,000.00 and the Beach Drive Property at $185,000.00. The properties are encumbered by liens well above the values. A complete list of the Debtor's assets can be found in the Schedules and Statement of Financial Affairs filed in this case. Unless a party in interest objects to the Debtor's estimate of value of any asset prior to confirmation of the Plan, the value of the assets set forth in the Plan shall be determinative.

**ARTICLE 6**

**SUMMARY OF THE PLAN**

This section contains a brief summary of the Plan, and it is qualified in its entirety by reference to the Plan, which accompanies this Disclosure Statement. **THIS SUMMARY DOES NOT PURPORT TO BE COMPLETE. THE PLAN ITSELF CONTROLS THE RELATIONSHIP BETWEEN THE DEBTOR AND CREDITORS. YOU SHOULD READ THE PLAN IN ITS ENTIRETY PRIOR TO CASTING YOUR BALLOT.**

<u>**Classification and Treatment of Claims.**</u>  The Plan provides for the following classification and treatment of claims.

**6.1    <u>Class I - Administrative Claims</u>**

Class I consists of the allowed Administrative Claims for actual and necessary costs and

expenses of administration entitled to priority under Sections 503(b) and 507(a)(1) of the Bankruptcy Code. This class includes, without limitation, post-petition tax claims, Debtor's attorneys' fees, approved professional fees, and fees due the United States Trustee, if any. Holders of Allowed Class I Claims shall be paid, in full, on the Effective Date of the Plan of Reorganization from the Debtor's cash funds, or upon such other terms as the Debtor and the holders of Allowed Class I Claims agree. Class I Claims are not impaired.

### 6.2    Class II – Secured Claims

Class II consists of all Secured Claims against the Debtor. Each holder of a Secured Claim in Class II is considered to be in its own separate subclass within Class II, and each such subclass is deemed to be a separate Class for purposes of the Plan. Unless otherwise specified, holders of Allowed Secured Claims in any of the Class II sub-classes shall receive full payment of the amount of their Allowed Secured Claims. Each Allowed Secured Claim shall be paid as specified below. Any of the Debtor's defaults under the loan documents with the Allowed Secured Claimant shall be deemed cured as of the Effective Date. To the extent such loan documents provide for a default resulting from the Debtor's bankruptcy filing, such default shall not be enforceable. Notwithstanding any pre-bankruptcy agreements with Class III Claimants, the Debtor's statement of the value of each secured claim shall be final unless a creditor objects to the Debtor's value prior to the confirmation of the Plan. Class II Secured Creditors shall retain the liens securing their Allowed Claims. The liens securing Allowed Class II Secured Claims shall be extinguished upon payment of the Allowed Class II Secured Claim and no prepayment penalty shall apply. The holder of an Allowed Class II Secured Claim that has been paid shall promptly file or record notice of the release of its lien.

### 6.2.1    Class II(a) – Secured Claim of J. Scott Miller, Hans R. Graf and Dan Bailey

Class II(a) consists of the Allowed Secured Claim of J. Scott Miller, Hans R. Graf and Dan Bailey ("Miller") relating to the Secured Promissory Note dated January 6, 2006 and as subsequently modified, as evidenced by Proof of Claim ("POC") No. 1 and secured by the 113 acres of vacant land located in Needles, California and the vacant land in Nogales, Arizona. The

holder of the Allowed Class II(a) Secured Claim shall receive payment in full from the sale of its collateral. The Allowed Class II(a) Claim will accrue interest at the contract rate of 9.0%. The holder of the Allowed Class II(a) Secured Claim shall receive payment of 70% of the net sale price ("Miller Release Price") for each lot sold within the Rio Vistancia Property. The Miller Release Price shall be paid from escrow upon closing of the sale and Miller shall release the lien on the lot sold. Debtor projects that Miller's Allowed Secured Claim will be paid in full in year 3 of the Plan. In the event of a sale of the Nogales Property, the net proceeds after payment of the required taxes and costs of sale, will be paid to reduce the Class II(a) Claim. Class II(a) is impaired.

### 6.2.2 **Class II(b) – Secured Claim of California Business Bank**

Class II(b) consists of the Allowed Secured Claim of California Business Bank ("CBB") relating to its Judgment Lien on the 113 acres of vacant land in Needles California and the single family home at 1184 Beach Drive, Needles, California. The holder of the Allowed Class II(b) Secured Claim shall receive payment in full from the sale of its collateral. The Allowed Class II(b) Claim shall receive payment of 5% of the net sale price ("CBB Release Price") for each lot sold within the Rio Vistancia Property until Class II(a) is paid in full. After Class II(a) is paid in full, the CBB Release Price will increase to 75% of the net sale price for each lot sold. The CBB Release Price shall be paid from escrow upon closing of the sale and CBB shall release the lien on the lot sold. Debtor projects that CBB's Allowed Secured Claim, which Debtor estimates at $1,235,000.00, will be paid in full in year four of the Plan. Class II(b) is impaired.

### 6.3 **Class III–Unsecured Claims**

Class III consists of all Allowed Unsecured Claims that are not entitled to classification in any other Class of Claims. Holders of Allowed Class III Claims shall receive payment in full of their Allowed Unsecured Claims. Debtor shall make yearly payments of $150,000.00 with the first payment due six months after the Effective Date ("Initial Payment Date"). Each Class III Claimant shall receive its pro rata share of the Unsecured Claims each year until paid in full. No interest will accrue or be paid to the holders of the Allowed Class III Claims and no creditor

will be paid more than the full amount of its Allowed Class III Claim. If a Class III claim is not an Allowed Claim prior to thirty (30) days before the Initial Payment Date, the Class III Claim shall receive payment on the one year payment date that falls after their Class III Claim becomes an allowed claim. Upon receipt of their respective payments all Allowed Unsecured Claims in this Class shall be deemed paid and discharged in full. The Class III Claims are impaired.

## ARTICLE 7

### POST-CONFIRMATION CONTROL

After confirmation of the Plan, the reorganized Debtor will be vested with ownership and control of all of the assets of the bankruptcy estate. The reorganized Debtor will be managed by Ron and Cristy Varela and owned by the Ron and Cristy Varela and the Varela Family Trust. The reorganized Debtor will be responsible for making payments under the Plan and for preparing and filing quarterly post confirmation financial reports. Copies of those reports shall be provided to the United States Trustee's Office. Until the Plan is substantively consummated and the case is closed, the reorganized Debtor will pay all quarterly fees to the United States Trustee's Office.

## ARTICLE 8

### MEANS TO IMPLEMENT PLAN

The Plan will be implemented upon entry of an Order by the Bankruptcy Court confirming the Plan. Upon the Effective Date, or at such other time as specifically provided for in this Plan, creditors holding Allowed Claims will receive the treatment provided for in the Plan. Creditors will only be entitled to the treatment of the Class of Claims within which they belong upon having their claim allowed.

The Plan will be funded through the sale of the Rio Vistancia Property and the Nogales Property. Debtor anticipates that the primary capital that will fund the Plan of Reorganization will come from the sale of lots within the Rio Vistancia Property. Upon entry of the Confirmation Order, Debtor will apply to the relevant government authorities for approval of a parcel map. The parcel map will divide the Rio Vistancia Property into approximately thirty seven lots. The parcel maps from the City of Needles will cost approximately $3,290.00 and

engineering will range between $7,500.00 and $10,000.00. These expenses will be paid by Debtors' principals.

## ARTICLE 9

## LIQUIDATION ANALYSIS

As a condition to Confirmation, Bankruptcy Code § 1129(a)(7) requires the Plan to provide that each creditor either accept the Plan or receive from the Debtor's estate as much under the Plan as each creditor would receive in a Chapter 7 liquidation of the Debtor. The Debtor valued its assets on Schedule A at $7,385,000.00 and on Schedule B at $9,500.00. Debtor has secured claims totaling $6,135,000.00 and unsecured claims totaling $338,935.00. Accordingly, Debtor's assets exceed the value of its liabilities and all claims shall be paid in full. A liquidation analysis chart is attached hereto as **Exhibit C**.

The Debtor's assets are subject to liens by Miller and California Business Bank. It is unlikely that a buyer exists that would purchase the Rio Vistancia Property as a whole or that this sale could occur in a timely manner. Debtor's principals will contribute sufficient funds to add services to the Rio Vistancia Property and subdivide it to sell parcels to developers. Debtor believes that this will provide a greater value to the creditors of this estate on a more expedited timeline. The Debtor believes that all creditors will receive full and timelier payment under the Plan then they would in a Chapter 7 liquidation.

## ARTICLE 10

## AVOIDANCE OF PRE-PETITION TRANSFERS

Within the 90 days prior to the Petition Date, the Debtor did not make payments to any creditors. Cessna Finance garnished the Debtor's bank account on September 9, 2014, however Cessna obtained only $2,126.27. Debtor believes that the cost of recovering the preferential payment exceeds the value to the estate. Moreover, unsecured creditors, like Cessna, will receive payment in full of their unsecured claims under the Plan. Accordingly, Debtor has concluded that no preferential transfers under 11 U.S.C. § 547 should be recovered. Cessna Finance may have recorded a judgment lien within the preference period, if so; Debtor will seek to avoid the lien.

## ARTICLE 11

## NON-BANKRUPTCY LITIGATION

On the Petition Date, Miller had initiated a trustee's sale of the Rio Vistancia Property. This foreclosure action was been stayed by the bankruptcy filing. If the bankruptcy were dismissed, the foreclosure would be revived and Miller would likely acquire the Rio Vistancia Property for significantly less than the value. The Debtor does not hold any rights to sue any parties. The Debtor is unaware of any other potential non-bankruptcy litigation.

## ARTICLE 12

## TAX ISSUES

The Debtor makes no representations regarding any tax implications resulting from confirmation of the Plan. **CLAIMANTS AND PARTIES IN INTEREST ARE ADVISED TO CONSULT WITH THEIR TAX ADVISORS CONCERNING THE INDIVIDUAL TAX CONSEQUENCES OF THE TRANSACTIONS CONTEMPLATED BY THE PLAN, INCLUDING STATE AND LOCAL TAX CONSEQUENCES.**

## ARTICLE 13

## BALLOTING INSTRUCTIONS

Creditors will vote to accept or reject this Plan. THIS PLAN CANNOT BE CONFIRMED IF THE PLAN DOES NOT RECEIVE AT LEAST TWO-THIRDS (2/3) IN AMOUNT AND MORE THAN ONE-HALF (1/2) IN NUMBER OF ALLOWED CLAIMS VOTING IN EACH IMPAIRED CLASS, provided, however, if the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to 11 U.S.C. § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the classes rejecting the Plan and that creditors receive as much or more under the Plan than they would receive in a Chapter 7 liquidation. In the event one or more, but not all, classes of impaired creditors vote in favor of the Plan, the Debtor will seek confirmation pursuant to 11 U.S.C. § 1129(b).

/ / /

/ / /

## ARTICLE 12

## MODIFICATION OF PLAN

Debtor reserves the right to modify the Plan in accordance with the provisions of the Bankruptcy Code as follows:

**13.1** **Pre-Confirmation.** In accordance with Section 1127(a) of the Code, the modification of the Plan may be proposed in writing by the Debtor at any time before its Confirmation, provided that the Plan, as thus modified, meets the requirements of Sections 1122 and 1123 of the Code, and the Debtor complies with Section 1125 of the Code.

**13.2** **Post-Confirmation.** In accordance with Section 1127(b) of the Code, the Plan also may be modified at any time after its Confirmation and before its substantial consummation, provided that the Plan as thus modified meets the requirements of Sections 1122 and 1123 of the Code, provided further that the circumstances then existing justify such modification, and the Court confirms the Plan as thus modified under Section 1129 of the Code.

**13.3** **Acceptance or Rejection of Modified Plan.** Any holder of a claim or equity interest that has accepted or rejected the Plan will be deemed to have accepted or rejected, as the case may be, the Plan as modified unless, within the time fixed by the Bankruptcy Court for doing so, such holder changes its previous acceptance or rejection.

**13.4** **Effect.** Every modification of the Plan will supersede the previous version of the Plan as and when ever each modification is effective. When superseded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void and unusable by the Debtor or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

## ARTICLE 13

## CONFIRMATION, RISKS & RECOMMENDATION

**14.1** **Best Interests Test.**

The Debtor believes that the "best interests test" imposed by 11 U.S.C. § 1129(a)(7) is satisfied by the Plan because each holder of a Claim or Interest not accepting the Plan will receive at least as much as such holder would receive in a Chapter 7 liquidation as discussed in Article 9

herein.

**14.2    Fair and Equitable Test.**

The Debtor believes that the Plan will satisfy the fair and equitable requirements of the Bankruptcy Code, to the extent such requirements are applicable based upon the vote of creditors on the Plan.

**14.3    Recommendation of the Debtor.**

The Debtor recommends that the Plan be approved.

RESPECTFULLY SUBMITTED:  April 20, 2015.

**DIAMOND R, LLC**

*/s/ Ron E. Varela*
Ron E. Varela, Member

**APPROVED AS TO FORM AND CONTENT:**

**ALLEN MAGUIRE & BARNES, PLC**

*By:*    */s/ THA #11160*
Thomas H. Allen
Katherine Anderson Sanchez
1850 N. Central Avenue, Suite 1150
Phoenix, Arizona  85004
Attorneys for Debtor